**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Charles N. ANDERSON and Grace M. Anderson, Respondents.**

No. 16389.

United States Court of Appeals
Sixth Circuit.

Dec. 23, 1966.

---

Frederick Youngman, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Michael K. Cavanaugh, Attys., Dept. of Justice, Washington, D. C., on the brief), for petitioner.

Richard J. Brentlinger, Columbus, Ohio (Ray G. Brown, Columbus, Ohio, on the brief), for respondents.

Before McALLISTER, Senior Circuit Judge, CELEBREZZE, Circuit Judge, and WILSON, District Judge *.

WILSON, District Judge.

This case comes before the Court upon the petition of the Commissioner of Internal Revenue seeking a review of the decision of the Tax Court of the United States. The Tax Court held, among other things, that the value of meals and lodging furnished the taxpayer by his employer was properly excluded by the taxpayer from gross income under the provisions of Section 119 of the Internal Revenue Code of 1954. (26 U.S.C. 1958 ed., Sec. 119) The facts, as found by the Tax Court, are not here disputed. The Commissioner does insist, however, that the Tax Court was in error in construing that portion of the statute which requires that meals and lodging be furnished "on the business premises of the employer" as a condition to their value being excluded from gross income in determining the taxpayer's income tax liability. Thus, the single issue presented upon this appeal is one of statutory construction.

The facts as found by the Tax Court, and insofar as relevant to the issue presented upon this petition for review, are as follows:

Charles N. Anderson, herein referred to as the taxpayer, was employed by the Lincoln Lodge Corporation as the manager of the Lincoln Lodge, a motel located in Columbus, Ohio, such employment beginning upon the date of the motel's opening on July 1, 1956, and continuing through the years 1958, 1959 and 1960, which form the three taxable years here involved. During the first year of operation, the taxpayer, his wife and three children lived in the motel in a two-room combination livingroom, bedroom, and kitchen suite. The unsatisfactory nature of such crowded quarters as a family residence was shortly called to the employer's attention. After considering the loss of revenue occasioned by the taxpayer's occupying additional space within the motel, the employer decided to look for a house close by and move the taxpayer and his family out of the motel. The taxpayer's preference for a home some several blocks from the motel was rejected by the employer, who desired for business reasons to keep its motel manager as close to the motel as possible. The employer considered, but likewise rejected, building a new residence upon the motel property, inasmuch as that land was considered by the employer to be too valuable for such a use. A lot was finally selected at 191 Schoolhouse Lane in nearby Lincoln Village, the lot being described as "two short blocks" from the motel, and being the closest available property zoned for single residence. The property was paid for by Lincoln Lodge Corporation. The Corporation also paid

* Frank W. Wilson, District Judge, Eastern District of Tennessee, sitting by designation.

for the construction of a single family residence thereon. For reasons not here relevant, title to the property was initially taken in the taxpayer's name, and later transferred to the name of Lincoln Lodge Corporation, but no issue exists but that the employer furnished all funds for the purchase and construction of the residence and was the owner of the property at all times and for all purposes relevant to this lawsuit. The taxpayer, as manager of the Lincoln Lodge, was required by his employer to be available upon a 24 hour a day basis in order to oversee the management and operation of the motel. For this reason he was required by his employer, as a condition of his employment, to live in the house at 191 Schoolhouse Lane, which was described as being approximately a four minute walk or a two minute drive from the main lobby of the motel or, as stated above, "two short blocks" from the motel. Upon completion of construction of the house in July of 1957, the taxpayer and his family moved into it. The home was provided by the employer without cost to the taxpayer. The employer also paid all utilities at the home, as well as all laundry, dry cleaning, and cleaning expenses. Additionally, the employer furnished the taxpayer's family with milk and certain staple groceries without cost to the taxpayer.

The Tax Court found the fair rental value of the residence to be in the sum of $1920.00 per year, the value of utilities furnished to be in the sum of $600.00 per year, the value of laundry, dry cleaning, and cleaning services to be in the sum of $600.00 per year and the value of milk and staple groceries furnished to be in the sum of $300.00 per year. These values are not here in dispute. Thus, for each of the three tax years here involved the value of meals furnished the taxpayer by his employer was in the sum of $300.00 per year and the value of lodging was in the sum of $3120.00.

No issue is here raised by the Commissioner with reference to the conclusions of the Tax Court that the meals and lodging were furnished for the convenience of the employer and the conclusion that the taxpayer was required to accept the lodging as a condition of his employment. Rather, it is the conclusion of the Tax Court that the meals were furnished and the lodging provided "on the business premises of the employer", and were thus properly excludable from gross income by the taxpayer for the years 1958, 1959 and 1960 that forms the issue presented upon this Petition for Review.

■ Section 61 of the Internal Revenue Code of 1954 defines gross income as " * * * all income from whatever source derived, including * * * [c]ompensation for services". (26 U.S.C. 1958 ed., Sec. 61) The relevant Treasury regulations in this regard provide that, "If services are paid for other than in money, the fair market value of the property or services taken in payment must be included in income." [26 C.F.R., Sec. 1.61–2(d)]

It is thus obvious that the value of meals and lodging received by the taxpayer in return for his services as manager of the motel would properly be includable in his gross income for the tax years involved unless excluded under another provision of the 1954 Code. See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Commissioner of Internal Revenue v. Lo Bue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142; Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483.

As authority for excluding the value of meals and lodging from gross income, the taxpayer relies upon Section 119 of the 1954 Code. This section provides in relevant part as follows:

SEC. 119. Meals or lodging furnished for the convenience of the employer.

There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—

(1) in the case of meals, the meals are furnished on the business premises of the employer, or

(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.

\* \* \* \* \* \*

(26 U.S.C. 1958 ed., Sec. 119)

Thus, the conditions for excluding the value of *lodging* furnished an employee are three: namely, (1) that such lodging be furnished for the convenience of the employer; (2) that it be located on the business premises of the employer; and (3) that the employee be required to accept such lodging as a condition of his employment. The conditions for excluding the value of *meals* furnished an employee are two: namely, (1) that such meals be furnished for the convenience of the employer and (2) that they be furnished "on the business premises of the employer".

The Tax Court in an unreviewed opinion, and without any specific effort at defining the statutory language "on the business premises of the employer", concluded that since the employer, motivated by business reasons, and for his own convenience, acquired the residence within two short blocks of the motel and required the taxpayer to live there to be more readily available at the motel on 24 hour a day call, the residence was "on the business premises" of the employer within the meaning of Sec. 119. The specific language of the opinion in this regard was as follows:

"In our view to conclude that property owned by an employer within two short blocks of a facility being managed by the employee who is required to be available on a 24 hour call for management of the employer's business, is not on the business premises of the employer within the meaning of Section 119, where the employee is required to accept such lodgings for the convenience of the employer, is too restrictive an interpretation. We, there-

fore, hold that the lodgings furnished to petitioner were furnished to him by his employer for the convenience of the employer and that petitioner was required to accept such lodgings on the business premises of his employer as a condition of his employment."

Thus, the Court below appears to have interpreted the phrase "on the business premises of the employer" as including any residential property owned by the employer and furnished the employee, provided (1) it was acquired from business motives; (2) it was in the vicinity of or "within two short blocks" of the place where the employee performed his duties; and (3) the employee was required to accept it as a condition of his employment. With this pragmatic conclusion this Court is unable to agree.

Before undertaking a construction or definition of the statutory language "on the business premises of the employer" as that phrase is used in Sec. 119, it is proper to call attention to the well settled rule of statutory construction which requires that provisions within tax legislation granting exemptions be strictly construed in accordance with their terms. Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29; United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40; Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477; Curtis v. United States, 336 F.2d 714, 721 (C.A.6th); Nielsen v. United States, 333 F.2d 615, 617 (C.A. 6th). As the Supreme Court stated in United States v. Stewart, supra, 311 U.S. p. 71, 61 S.Ct. p. 109:

" \* \* \* respondent has succeeded only in casting some doubt on the proper construction of the statute. Yet those who seek an exemption from a tax must rest it on more than a doubt or ambiguity. Bank of Commerce v. [State of] Tennessee, 161 U.S. 134, 146 [16 S.Ct. 456, 460, 40 L.Ed. 645]; Id. 163 U.S. 416, 423 [16 S.Ct. 1113, 41 L.Ed. 211]. Exemptions from taxation cannot rest upon mere implications. United States Trust Co. [of

64

New York] v. Helvering, 307 U.S. 57, 60, [59 S.Ct. 692, 693, 83 L.Ed. 1104]. As stated by Mr. Justice Cardozo in Trotter v. [State of] Tennessee, 290 U.S. 354, 356 [54 S.Ct. 138, 139, 78 L.Ed. 358], 'Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced.' And see Pacific Co., Ltd. v. Johnson, 285 U.S. 480, 491, [52 S.Ct. 424, 426, 76 L.Ed. 893]. Hence broad, generalized statutory exemptions have frequently been construed narrowly and confined to those situations where the subject matter of the exemption was directly, not indirectly or remotely, involved. Murdock v. Ward, 178 U.S. 139, [20 S.Ct. 775, 44 L.Ed. 1009]; Hale v. [Iowa] State Board of Assessment and Review, 302 U.S. 95, [58 S.Ct. 102, 82 L.Ed. 72]; United States Trust Co. [of New York] v. Helvering, supra. * * *"

■ The requirement that meals and lodging must be furnished and accepted "on the business premises of the employer" is new in the 1954 Code. The original version of the statute, as enacted in the House of Representatives, used the term "place of employment". This term was changed by the Senate to "business premises" and this change was acceded to by the House. H. Conference Rep. No. 2543, 83rd Cong., 2d Sess., p. 27 [3 U.S.C.Cong. & Adm.News (1954) 5280, 5286.] Nothing in the Senate or Conference report suggests that the term "business premises" was intended to extend the exclusion beyond the version offered by the House which used the phrase "place of employment". Indeed the Senate Report stated [S.Rep. No. 1622, 83d Cong., 2d Sess., p. 19 (3 U.S.C.Cong. & Adm.News (1954) 4621, 4649)]:

The House and your committee has adopted provisions designed to end the confusion as to the tax status of meals and lodging furnished an employee by his employer. Under both bills meals and lodging are to be excluded from the employee's income if they are furnished at the place of employment and the employee is required to meet certain other conditions specified below.

The Conference Report likewise contained similar language. There it is stated (H. Conference Rep. No. 2543, supra, p. 27):

The term "business premises of the employer" is intended, in general, to have the same effect as the term "place of employment" in the House bill. For example, lodging furnished in the home to a domestic servant would be considered lodging furnished on the business premises of the employer. Similarly, meals furnished to a cowhand while herding his employer's cattle on leased lands, or on national forest lands used under a permit, would also be regarded as furnished on the business premises of the employer. * * *

Thus, it would appear that ownership by the employer of the lodging or the place where the meals are furnished is not intended by Congress to be the crucial test, nor even an essential element, of the meaning of "business premises". Rather, the emphasis is upon the place where duties of the employee are to be performed.

■ This emphasis in defining "business premises" in terms of the place where the employee performs significant duties of his employment is likewise set forth in the pertinent Treasury regulations, Sec. 1.119-1, wherein it is provided:

SEC. 1.119-1. MEALS AND LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER.

* * * * * *

(c) Rules. (1) For purposes of this section, the term "business premises of the employer" generally means the place of employment of the employee. * * *

* * * * * *

(26 C.F.R., Sec. 1.119-1.)

While this Court is not bound by Treasury regulations where they are inconsistent with the revenue statute, which they seek to interpret and implement,

they must be sustained unless unreasonable or plainly inconsistent with the statute, and may, where long continued without substantial change, be deemed to have received Congressional approval and have the effect of law. Morrison v. United States, 355 F.2d 218 (C.A. 6, 1966). As stated in the case of Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831:

> "This Court has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons."

The phrase "on the business premises of the employer", as used in Sec. 119, has been the subject of judicial construction in other reported decisions. In the case of United States v. Barrett, 321 F.2d 911 (C.A. 5, 1963) the issue confronting the Court was whether state highway patrolmen were entitled to exclude from gross income the reimbursement received by them from the State of Mississippi for meals purchased at various locations along the highway while on duty. The Commissioner there sought to contend that "business premises" was confined to the State Patrol Headquarters. The Court concluded that since the "business of the state law enforcement agency was not confined to the patrol headquarters, but rather, it covers every road and highway in the State 24 hours a day every day", the value of meals taken along the highway while on duty was excludable.

A similar issue involving the exclusion of the value of meals furnished a highway patrolman was presented in the case of United States v. Morelan, 356 F.2d 199 (C.A. 8, 1966) with a similar result being reached. In affirming the decision of the District Judge, reported at 237 F.Supp. 879, the Appeals Court concluded that restaurants near or adjacent to highways were "on the business premises of the employer" for the purpose of determining the excludability of the value of meals taken there by a highway patrolman while on duty.

Although the Court in each of the foregoing cases rejected the Commissioner's contention that "business premises" would be limited to premises owned or controlled by the employer, the decisions are consistent with the view that the premises must be those upon which some portion of the employee's duties were performed. In fact, the test was expressly so stated in the case of United States Junior Chamber of Commerce v. United States, 334 F.2d 660, 160 Ct.Cl. 392 (1964). There the plaintiff had provided a home for its national president. The issue confronting the Court was as to the excludability from gross income under Sec. 119 of the rental value of the lodging thus furnished. Having found as a fact that a significant portion of the president's duties were performed at the home, the Court held that the rental value of the home was not includable in the president's gross income. In so holding the Court stated:

> "We think that the business premises of § 119 means premises of the employer on which the duties of the employee are to be performed."

An even more pertinent decision to the issue now confronting this Court is that of Dole v. Commissioner, 43 T.C. 697, as affirmed by the Court of Appeals for the First Circuit at 351 F.2d 308. The significance of the *Dole* case lies not so much in its factual similarity with the present case as in the fact that the decision of the Tax Court in the *Anderson* case upon the issue of "business premises" was specifically rejected by the Court of Appeals. The excludability by employees under Sec. 119 of the fair rental value of Company-owned housing furnished for the convenience of the employer was there involved. In an opinion concurred in by a majority of the Tax Court, that Court stated:

> "There is still another, and equally compelling, reason for holding that petitioners have failed to bring them-

selves within the purview of section 119. These company-owned houses were not located 'on the business premises' of the Packard Mills. Congress has plainly stated that the phrase 'on the business premises' *generally* means at the place of employment. See H. Rept. No. 1337, 83d Cong., pp. 18, A39 (1954); S. Rept. No. 1662, 83d Cong., pp. 19, 190 (1954); and Conference Report, H. Rept. No. 2543, 83d Cong., pp. 26–27. We think the phrase should be construed to mean either (1) living quarters that constitute an integral part of the business property or (2) premises on which the company carries on some of its business activities. We doubt whether Congress ever intended section 119 to apply to situations such as this, where the employee does his work in one location and resides at another location some distance away. Whatever may be said of the factual conclusion reached in Charles N. Anderson [Dec. 26,806], 42 T.C. 410 (1964), on appeal (C.A. 6, November 20, 1964), that the residence of the motel manager, being within 'two short blocks' of the motel, was sufficiently integrated with the motel property as to be 'on the business premises,' the facts here do not permit any such ultimate conclusion."

In a concurring opinion Judge Raum of the Tax Court went on to explicitly disapprove of the Tax Court decision in the *Anderson* case in the following terms:

"The matter probably would never have reached this present state of apparent confusion and disagreement among the members of this Court were it not for the unreviewed decision in *Charles N.* Anderson [Dec. 26,–806], 42 T.C. 410. I think that Anderson is distinguishable for the reason articulated in the majority opinion. But I also think that it is wrong and that it should be overruled to put an end to the confusion that it has created.

"The fact that the motel manager's house in *Anderson* was 'only two short blocks' (42 T.C. at p. 415) from the motel property should have been total-ly irrelevant. The house either was or was not 'on the business premises', and I can find no basis in the statute to stretch those premises 'two short blocks', or 'one short block', or even 'one-half short block' beyond the perimeter of the motel property. Of course, if 'two short blocks' are not fatal, it is easy to see how one might be tempted to enlarge the distance to the one mile involved herein, or, for that matter, two miles or five miles. The real difficulty is that neither the residence in *Anderson* nor any single residence involved herein is 'on the business premises' of the employer. And in view of the mischief generated by *Anderson* I think it should be explicitly disapproved."

The Court of Appeals in affirming, did so specifically upon the opinion of Judge Raum.

Each of the foregoing cases is consistent with an interpretation of the phrase "on the business premises of the employer" as requiring that meals be furnished or lodging be provided at a place where the employee performs some significant portion of his duties. That this is not a complete definition of the concept of "business premises," however, may be illustrated by the case of Boykin v. Commissioner of Internal Revenue, 260 F.2d 249 (C.A. 8, 1958). There a physician employed by the Veterans Administration was assigned living quarters in a residence located upon a Veterans Hospital grounds. While no duties were performed by the employee at the residence, but rather at the hospital, no issue was raised in the case but that under Sec. 119 the lodging was upon the hospital grounds and therefore upon the premises where the employer's business was conducted, i.e., the hospital. The Court accordingly saw no occasion to raise the "business premises" issue, but rather the case went off upon the meaning of other terms within the statute, which terms are not here in issue.

■ Having thus considered the language of the statute, together with the

legislative history, the Treasury regulations, and the relevant case authority from other jurisdictions, while all the time bearing in mind the rule of statutory construction as hereinabove stated, this Court is of the opinion that the phrase "on the business premises of the employer," as used in Sec. 119, means that in order for the value of meals or lodging to be excluded from gross income, the meals must be furnished or the lodging be provided either at a place where the employee performs a significant portion of his duties or on the premises where the employer conducts a significant portion of his business.

Returning now to the decision of the Tax Court, we are of the opinion that the Tax Court arrived at an erroneous construction of the phrase "business premises". It has construed the phrase as requiring only that the meals be furnished or the lodging be provided upon property acquired by the employer from business motives, provided that such property is located in the vicinity of or "within two short blocks" of other property upon which the employer conducts his business. As regards lodging, the additional requirement imposed by the statute to the effect that the employee be required to accept the lodging as a condition of his employment is apparently included by the Tax Court within its definition of "business premises".

To make ownership by the employer from business motives the test of a "business premises" is to fail to provide for instances of meals furnished or lodging provided on non-owned premises, contrary to the expressed Congressional intent, while at the same time opening wide a tax loophole contrary to any expressed Congressional intent.

To make "two short blocks" or nearness to other business property of the employer the test is to disregard the word "on" as contained in the phrase "on the business premises of the employer", thereby rendering uncertain that which is certain and requiring litigation in each case to determine what may be sufficiently near under the circumstances of the particular case. Had Congress so intended, it would appear that it could readily have used the words "in the vicinity of" or "nearby" or "close to" or "contiguous to" or similar language, rather than say "*on*" the business premises.

To make acceptance by the employee as a condition of his employment the test is to require that which is elsewhere expressly required by the statute and render redundant the phrase "on the business premises of the employer".

Examples, of course, can be given where "near" is so nearly equivalent to "on" as to indicate an absurdity in distinguishing between the two. However, this case does not present such an absurdity. Moreover, there is an element of arbitrariness in the drawing of every line. The drawing of not otherwise unreasonable tax lines is a legitimate function of Congress. When Congress drew this line so as to require that the meals be furnished or the lodging be provided "*on* the business premises of the employer", it is not the proper function of a court to disregard that line and substitute a line of its own choosing.

The Tax Court did not purport to find that any significant portion of the taxpayer's duties were performed within the residence provided for his use. Merely being "on call" would not of itself form a basis for such a finding. The evidence is undisputed that the residence was located upon property separate and apart from the motel. The duties of the employee were performed at the motel. The residence therefore was not itself a business premises. The business of the employer was located at the motel. The residence therefore was not *on* the business premises of the employer. Rather, the residence was provided and the meals were furnished upon a premises other than the business premises of the employer.

The decision of the Tax Court will be reversed and a judgment will enter in accordance with this opinion.

McALLISTER, Senior Circuit Judge (dissenting).

This is a petition by the Commissioner of Internal Revenue for review of a decision of the Tax Court.

There is one issue in this case: Whether a manager of a motel, who is entitled to an exclusion from gross income of the value of meals or lodging furnished to him on the business premises of his employer, is entitled to such exclusion if the premises furnished to him for lodging, as a condition of his employment, are on the premises of the employer across the street from the motel where he works—in the same way he would be entitled to the exclusion if he were permitted to live on the motel premises where he had lived for several years before his employer caused him to move, solely because the employer could secure more income from the motel.

During the taxable years 1958, 1959, and 1960, Charles Anderson, taxpayer, was employed as manager of the Lincoln Lodge, a motel located in Columbus, Ohio. From the time Lincoln Lodge was opened on July 1, 1956, and until July 1957, Mr. Anderson, his wife and three children occupied a two-room suite in the motel. In this case, Mrs. Anderson was joined as a respondent, but the real taxpayer is Mr. Anderson, and, hereafter, instead of referring to husband and wife as taxpayers, it will be sufficient to refer to Mr. Anderson as the taxpayer.

Because of the need for more space and the value of the rooms in the motel for guests, the Lincoln Lodge Corporation, owner of Lincoln Lodge, required Mr. Anderson to leave the motel itself and reside nearby. His preference was a two-story house already constructed, but, instead, the owner of Lincoln Lodge selected the closest available lot to the lodge and constructed thereupon a small one-story dwelling for the use of Mr. Anderson, as manager, and his family. The dwelling was two short blocks from the motel.

The immediate reason for the decision of the motel company in requiring this change of residence for Mr. Anderson, instead of having him and his family live in the motel, was economic, since the motel could realize much more income through the renting of the rooms in the motel to guests, and building a house nearby for the Andersons. The evidence is clear that the taxpayer was required to live in the house furnished by the company as a condition of his employment as manager, and for the convenience of his employer. He was obliged to be available and on call twenty-four hours a day for the business of the motel.

The Commissioner determined that the taxpayer had received compensation from his employer in the amount of $6,120 by reason of utilities, groceries, laundry and the like, furnished Mr. Anderson by his employer, as well as the fair rental value of the house.

The Tax Court found that meals and lodging furnished to Mr. Anderson while living in the house where he was obliged to reside by the company, were furnished for the convenience of the employer and on the business premises of the employer within the meaning of Section 119 of the Internal Revenue Code of 1954, and, accordingly, were excludable from the taxpayer's gross income. 42 T.C. 410 (1964)

Section 119 of the Internal Revenue Code of 1954 provides:

"There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—

"(1) in the case of meals, the meals are furnished on the business premises of the employer, * * *.

"(2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment."

In seeking a review of the decision of the Tax Court, the Commissioner insists that, because Mr. Anderson and his family were not residing in the motel, but in a house constructed for his use, as manager, on property nearby, owned

by the motel company, the meals and lodging furnished to him at such house, were not furnished on the business premises of the employer.

As to whether the one-story dwelling, expressly built by the employer to house Mr. Anderson, as manager of the motel, together with his family, constituted business premises of the employer, there are, in our view, the Congressional history and a number of adjudications which support the decision of the Tax Court that such premises were actually "business premises" of the employer. But, before referring to those authorities, it is to be observed that the words "business," and "premises" are two words of the most general meaning to be found in our language.

"Business" is a word commonly used to describe every occupation in which men engage. Bennett v. Hebbard, 74 N.H. 411, 68 A. 537. The word "business" in its broad sense embraces everything about which one can be employed, and, in its narrower sense, it signifies a calling for the purpose of livelihood or profit. Easterbrook v. Hebrew Ladies' Orphan Society, 85 Conn. 289, 82 A. 561, 41 L.R.A.,N.S., 615.

The meaning of the word "premises" is to be determined by its context and is dependent on the circumstances in which it is used. It is said that it has various meanings, depending on the subject matter in connection with which it is used. It has no fixed legal significance, and no definition applicable to every situation. O'Connor v. Great Lakes Pipe Line Co., 63 F.2d 523 (C.C.A.8). "Premises" may mean a room, shop, building or definite area. Robinson v. State, 143 Miss. 247, 108 So. 903. The word is employed in various senses in particular phrases. State v. Almy, 32 R.I. 415, 79 A. 962.

Because of the various meanings of the term "business premises," we have recourse, in our determination of its meaning, first, to the Congressional history of the section of the statute in which it is used.

In the Report of the Ways and Means Committee of the House of Representatives on Section 119 of the Internal Revenue Code of 1954, it is stated:

"Under section 119, if meals or lodging (1) are furnished at the place of employment, and (2) are required to be accepted by the employee at the place of employment as a condition of his employment, the value thereof shall be excluded from gross income notwithstanding the fact that such meals or lodging will be additional compensation to the employee. * * *

. "The operation of this section may be illustrated by the following examples:

"(1) A civil-service employee of a State is employed at an institution and is required, as a condition of his employment, to live at the institution in order to be available for duty at any time. Under the applicable State statute, his meals and lodging are regarded as a part of the employee's compensation. The employee would nevertheless be entitled to exclude the value of such meals and lodging from gross income.

"(2) An employee of an institution is given the choice of residing at the institution free of charge, or of residing elsewhere and receiving an allowance of $30 per month in addition to regular salary. If he elects to reside at the institution the value to the employee of the lodging furnished by the employer will be includable in gross income, *because his residence at the institution is not required as a condition of his employment.*" (Emphasis supplied.) H.Rep. No. 1337, 83d Cong., 2d Sess., 3 U.S.C.Cong. & Adm.News (1954), 4175, 4176.

In the Report of the Finance Committee of the Senate on Section 119 of the Internal Revenue Code of 1954, it is stated:

"The House and your committee has adopted provisions designed to end the confusion as to the tax status of meals and lodging furnished an em-

ployee by his employer. Under both bills meals and lodging are to be excluded from the employee's income if they are furnished at the place of employment and the employee is required to meet certain other conditions specified below.

"(2) Changes made by committee

"Your committee believes that the House provision is ambiguous in providing that meals or lodging furnished on the employer's premises, which the employee is required to accept as a condition of his employment, are excludable from income whether or not furnished as compensation. *Your committee has provided that the basic test of exclusion is to be whether the meals or lodging are furnished primarily for the convenience of the employer (and thus excludable) or whether they were primarily for the convenience of the employee (and therefore taxable)."* (Emphasis supplied.) S.Rep. No. 1622, 83d Cong., 2d Sess., 3 U.S.C.Cong. & Adm.News (1954), 4649.

In the detailed discussion of the bill in Senate Report, it is stated with reference to Section 119:

"Under section 119 of the bill as passed by the House if meals or lodging are (1) furnished at the place of employment, and (2) are required to be accepted by the employee *at the place of employment* as a condition of the employment, the value thereof is excludable from the employee's gross income. Under section 119 as amended by your committee, there is excluded from the gross income of an employee the value of meals or lodging furnished to him for the convenience of his employer whether or not such meals or lodging are furnished as compensation. In the case of meals the exclusion is permitted only if the meals are furnished on the business premises of the employer. *In the case of lodging the exclusion is permitted only if the employee is required to accept the lodging on the business premises of the employer as a condition of his employment."* (Emphasis supplied.) S.Rep.

No. 1622, 83d Cong., 2d Sess., 3 U.S.C. Cong. & Adm.News (1954), 4825.

In the conference Report on the Internal Revenue Code of 1954, it is stated, with reference to Section 119, as follows:

"Amendment No. 38: The House bill provided that there shall be excluded from the gross income of an employee the value of any meals or lodging furnished by the employer (whether or not furnished as compensation) but only if such meals or lodging are furnished *at the place of employment,* and are required to be accepted at the place of employment as a condition of the employment. The Senate amendment provides that meals or lodging furnished for the convenience of the employer are excluded, but only if (1) such meals are furnished *on the business* premises of the employer, or (2) the employee is required to accept such lodging on the employer's business premises as a condition of his employment. The Senate amendment also provides that in determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing the terms of employment shall not be determinative of whether the meals or lodging are intended as compensation. The term *'business premises of the employer' is intended, in general, to have the same effect as the term 'place of employment' in the House bill.* * * * The House recedes." (Emphasis supplied.) H.Rep. No. 2543, 83d Cong., 2d Sess., U.S.C.Cong. & Adm.News (1954), 5286.

In the aforementioned Conference Report it was carefully explained that the "term 'business premises' of the employer, is intended, in general, to have the same effect as the term 'place of employment' in the House Bill." The Conference Report also stated, by way of further explanation in this regard, that the business premises of the employer *does not require the active conduct of the business of the employer thereat* and

then, most importantly, makes the intent crystal clear when it declares: *"For example, lodging furnished in the home to a domestic servant would be considered lodging furnished on the business premises of the employer."* (Emphasis supplied.) The foregoing obviously indicates the latitude which Congress considered must be allowed by the courts in making a determination as to the construction of the term "business premises." As remarked by Judge Scott of the Tax Court in a concurring opinion in Dole v. Commissioner, 43 T.C. 697, the changes made by the Conference Report, above mentioned, with respect to the term "on the business premises," apply not only to lodging "at the place of employment," but also to a lodging which is "business premises" of the employer because it is so vital to the operation of such employer's business that an employee live at a particular location, that the employer supplies the dwelling at that location specifically for the purpose of having the employee live therein in order to enable the employee to properly perform the duties of his employment.

The Tax Court, in its opinion in the instant case, found that the house in which the manager of the motel was required to live with his family was business property of the motel, "and in this meaning of the term 'business premises' was a part of the 'business premises' of the petitioner's employer." The president of the motel testified that he considered the house which was built for the manager and his family a part of the business premises of the motel.

The important consideration in this case is that, as far as Section 119 is concerned, Congress did not put geographic bounds on the business premises of an employer.

In Morelan v. United States, 237 F. Supp. 879 (D.C.Minn.), Chief Judge Devitt had occasion to rule on the application of Section 119 of the Internal Revenue Code of 1954. In that case, two Minnesota state highway patrolmen brought a suit for the refund of income taxes assessed, and paid by them. The

taxes were levied on the three-dollar-per-day subsistence allowance received by the patrolmen for each working day as reimbursement for meals purchased, as required, in public restaurants adjacent to the highway which they patrolled. Judge Devitt held that the allowance was excludable as representing the value of meals furnished for the convenience of the employer. He further held that the "business premises" of the State of Minnesota, for the purpose of determining whether the three-dollar-per-day subsistence allowance received by the patrolmen for reimbursement for meals purchased as required in public restaurants adjacent to the road, extended all over the State and particularly to the highways where the patrolmen worked. In his opinion, Judge Devitt said:

"The defendant's contention that the subsistence allowance is not excludable under § 119 because the meals were not consumed 'on the business premises of the employer,' *while theoretically arguable, doesn't make much sense* because the 'business premises' of the State of Minnesota extend over all of the State and particularly to the highways of the State where these plaintiffs worked. United States v. Barrett, 321 F.2d 911, 5th Cir. (1963)." (Emphasis supplied.)

The decision of the Court of Appeals of the Fifth Circuit in United States v. Barrett, supra, above quoted and relied upon by Judge Devitt in United States v. Morelan, supra, and involving the same question, was attacked by the Government as completely erroneous in its brief filed on appeal in the *Morelan* case; and the Government, on appeal, argued that the *Morelan* case, involving the exclusion under Section 119, from gross income of a state highway patrolman for meals purchased while in duty status in public restaurants adjacent to the highway, was to be decided according to the same rule of law that governed deductibility of expense for food or lodging of a supervisor who was required, as a condition of employment, to live a mile from his employer's mill in a company-owned

house, citing Dole v. Commissioner, 43 T.C. 697, affirmed by the First Circuit in 351 F.2d 308.

We go into some detail with regard to the foregoing, since we consider that the *Morelan* case from the Eighth Circuit and the *Barrett* case from the Fifth Circuit are the authorities that are not only correctly decided, but also support the decision of the Tax Court in the instant case; and we review the *Dole* case, as affirmed on appeal by the First Circuit, since it is the chief authority relied upon by the Government in seeking to reverse the decision of the Tax Court in the present controversy.

This calls for some consideration of the arguments of the Government in which it sought to convince the Court of Appeals in the *Morelan* case that, because the state highway patrolman consumed his meals near or adjacent to the highway, on private premises of a restaurant, the cost of such meals was not excludable under Section 119, because they were not consumed on the "business premises of the employer;" and it also calls for discussion of the *Dole* case on which, as has been said, the Government chiefly relies.

According to a narrow, technical construction of Section 119, a private restaurant on private premises at a distance of a block, or half a block, from the highway could not be interpreted as being "on the business premises" of the state police department, or "on the business premises" of the State of Minnesota. But *Barrett* and *Morelan* decided directly contrary to such a construction; and, since those cases were decided by the Courts of Appeals, and no petitions for writs of certiorari were requested, a contention, at the present time, that those cases were wrongly decided would be unconvincing, not only because of the persuasive reasoning in those opinions, but also because of the fact that no attempt was ever made to seek review of them.

However, we revert to the arguments and reasoning of the Government in the *Morelan* case, which are identical to the reasoning it pursues in the instant case.

In its brief on appeal in *Morelan*, the Government contended:

"The District Court erred in relying upon United States v. Barrett, 321 F.2d 911 (C.A.5th), to hold that meals purchased by the taxpayers [state highway patrolmen] at restaurants near or adjacent to highways were consumed 'on the business premises of the employer' within the meaning of Section 119. The history of the convenience of the employer rule from 1919 to the present time shows that even if it could be argued that the highways constitute the business premises of the State Patrol for other purposes, nevertheless it never has been intended that an employer's premises should include numerous commercial restaurants selected by him for purposes of Section 119. Instead, the rulings and Regulations referred to, supra, have confined an employer's premises for purpose of Section 119 to a single place, such as a hospital where an employee is required to remain and take his meals during meal hours or a home in which a domestic servant is required to eat.

"Congress manifested an intention to restrict the places where an employer furnishes meals or lodging when it enacted Section 119. As we have pointed out, the House version of Section 119 required that, to obtain an exclusion from gross income meals be furnished and the employee be required to accept them 'at the place of employment.' See H.Rep. No. 1337 supra, p. 18 (3 U.S.C.Cong. & Adm.News (1954) 4017, 4042). The Senate substituted the phrase 'on the business premises of the employer' in place of the House's language, to minimize any confusion that meals and lodging must be furnished at the specific place where the employee is employed. See S.Rep. No. 1662, supra, pp. 19, 190–191 (3 U.S.C. Cong. & Adm.News (1954) 4621, 4649, 4825, 4826). * * *

"In any event, it is clear that the private restaurants selected by the

taxpayers are not located on the business premises of the taxpayers' employer. Each taxpayer patrolled highways within an approximate 10 to 15-mile square station area and selected a restaurant in that area in which he desired to eat (provided the restaurant met certain minimum standards). It is difficult to conceive, as the Fifth Circuit held in United States v. Barrett, supra, that the business premises of a state patrol should encompass every road and highway in the state 24 hours a day, seven days a week, merely because the patrol is responsible for maintaining State laws and safety on the highways (R. 45–46). The fact that the patrol's duties relate to the highways should not confer any special status upon such highways so as to include them with the term 'business premises of the employer' for purposes of Section 119. Similarly, the fact that a metropolitan police force is responsible for maintaining law and order and safety within an entire city, or a sheriff is similarly responsible for an entire county, should not make an entire city or county the business premises of the city police force or the sheriff's office for purposes of Section 119."

The Government further argued in its brief on appeal in the *Morelan* case:

"The government contends that United States v. Barrett, 321 F.2d 911 (C.A.5th), wrongly held that meals purchased at restaurants near or adjacent to highways were consumed 'on the business premises of the employer' within the meaning of Section 119. Such a holding emasculates the language and purpose of the statute by providing very few, if any restrictions as to what comprises an employer's premises. * * *

"The taxpayers have overlooked the language used by the Government with respect to the substitution by the Senate of the term 'business premises of the employer' in place of the term 'place of employment' used by the House. The Government's brief points out,

clearly we thought, that this change in language was not intended to effect any substantive change in the statute but merely to cause less confusion as to the extent of an employer's business premises. Dole v. Commissioner, 43 T.C. 697, cited by Government on this point, has been affirmed per curiam by the First Circuit on October 14, 1965 (65–2 U.S.T.C., par 9688) as follows: 'Judgment will be entered affirming the decision of the Tax Court on the concurring opinion of Judge Raum. * * * 43 T.C. No. 55 (2/19/65).' In that case the nature of the taxpayers' supervisory jobs required them to live in close proximity to their employer's mill. The company told them to live in company-owned houses located approximately one mile from the mill. The majority opinion disallowed an exclusion for the value of the lodgings furnished to the taxpayers on the ground that, although the houses were furnished because of the taxpayers' employment, occupancy was not necessary for the proper performance of their duties. The majority opinion also concluded that the houses were not sufficiently integrated with the mill property as to be on the business premises. Judge Raum's concurring opinion, in which two other judges concurred, decided the case solely on the business premises point, and set forth strict tests as to what constitutes such premises for purposes of Section 119. In part, his opinion states as follows (43 T.C., pp. 707–709):

'The furnishing of tax-free food and lodging to corporate officers or other employees was susceptible of abuse, and the tests applied to determine the tax-free character of the food or lodging were unsatisfactory; accordingly, section 119 was enacted in the 1954 Code to spell out with particularity the restrictive conditions under which such exceptional tax treatment would be permitted. One of those conditions is that the lodging must be "on the business premises" of the employer. The

statute does not say "at some convenient or reasonably accessible" place; it does not say "in any nearby building" owned by the employer. These words mean what they say and should not be given any strained or eccentric interpretation so as to frustrate what the Legislature obviously tried to achieve.

'* * * To construe the statute otherwise would be to dispense entirely with the requirement in section 119 that the lodging be furnished "on the business premises of the employer"; for one could argue with equal persuasiveness in every case that the house is on the business premises where the other conditions of the statute are satisfied, namely, where the lodging is furnished for the convenience of the employer and is required as a condition of employment. If compliance with these latter two requirements is sufficient to justify characterizing the house itself as "business premises" and thus to make the exemption applicable, the third condition, as to "business premises," would become wholly meaningless. I cannot believe that Congress intended any such futile result, and it seems clear that the condition relating to "business premises" was meant to have independent operative scope. It is also plain to me that Congress used that term in the normal sense as referring to the actual conduct of the employer's business and not in some esoteric sense relating to the purpose for which the property was held.'

"This reasoning is equally applicable to the present case."

In other words, the Government, on appeal, in the *Morelan* case, contended that a decision denying a deduction to an employee who lived a mile away from the employer's mill in a company-owned house, the occupancy of which was not necessary for the proper performance of his duties, was authority for denying deductions to a highway patrolman for meals purchased at restaurants near or adjacent to highways, on the ground that they were not furnished by his employer "on the business premises of his employer."

Such a narrow construction of the statute by the Commissioner in the *Morelan* case is, in our view, parallel to the construction of the statute sought by the Commissioner in the instant case.

To reverse Judge Devitt's decision in *Morelan,* allowing exclusion from gross income, under Section 119, to Minnesota highway patrolmen, for meals furnished at restaurants adjacent to the highway, the Government therefore sought, on appeal, to show that United States v. Barrett, supra, was wrongly decided and, in doing so, based its chief reliance on the language used in the concurring opinion of Judge Raum in Dole v. Commissioner, 43 T.C. 697, heretofore quoted and later to be discussed.

However, on the appeal from the decision of Chief Judge Devitt, the United States Court of Appeals for the Eighth Circuit, in United States v. Morelan, 356 F.2d 199 (C.A.8), gave short shrift to the narrow construction of the statute sought by the Government. Without discussing or taking any notice of the language of the *Dole* case (on which the Government relied and from which it extensively quoted in its brief on appeal), the Court of Appeals affirmed the judgment of the District Court, holding that restaurants near or adjacent to highways are "on the business premises of employer" for the purpose of determining whether subsistence allowance received by highway patrolmen expended, in part, for meals taken at such restaurants was excludable under Section 119 of the Internal Revenue Code of 1954; and, with reference to Judge Devitt's opinion, above quoted, Chief Judge Vogel, speaking for the court, said:

"It would seem to be patently obvious that restaurants near or adjacent to highways are, in this case, 'on the business premises of the employer' as required by § 119 of the Code. In United

States v. Barrett, 5 Cir., 1963, 321 F.2d 911, it is stated at page 912:

" 'The Commissioner takes too narrow a view of what constitutes the "business premises" of the Mississippi Highway Patrol. The major "business" of this state law enforcement agency is obviously not confined to isolated station houses; rather, it covers every road and highway in the state twenty-four hours a day every day. In view of the special nature and functions of the highway trooper's work, it is unrealistic to treat the employer's place of business as limited to the state patrol headquarters. This criterion, therefore, is not decisive against the excludability of the sums here in question.'

"Congress *did not put geographic bounds on the business premises of an employer.*" (Emphasis supplied.)

It has been said that the *Morelan* case bears no similarity to the instant case since the *Morelan* case, involving state highway patrolmen eating at private restaurants on private premises adjacent to, or near, the highway, holds that such patrolmen consumed their meals "on the business premises of [their] employer," whereas, in the present case, it is said that Mr. Anderson does not have his meals on the business premises of his employer. Although he is required, as manager of the business of his employer, to live on premises as close to the motel as can be secured by the employer, for his own convenience—and for Anderson's proper discharge of his duties as manager of his employer's motel—it is argued that he does not consume his meals on the "business premises" of his employer, because the business premises—the motel—are separated a short distance, geographically, from the premises supplied by the employer; that such premises therefore are only "close to" or "nearby" the motel; and, since such meals are not consumed "on" the business premises of the employer, they are not excludable under Section 119. But, if this strict construction were applied to *Morelan*, it would have been held that the highway patrolmen were not consuming their meals "on" the business premises of their employer when they were eating on the private premises, a block, or a half a block away from the highway. This was what the Government contended in the *Morelan* case—that the meals were not consumed "on" the premises of the employer; and such a construction was held erroneous by the District Court and the Court of Appeals, in that case, as being too narrow. If we approve the *Barrett* and *Morelan* cases, there is no reasonable way of avoiding affirmance of the Tax Court in the instant case, unless, as Chief Judge Vogel expressed it in *Morelan,* quoting from *Barrett,* "too narrow a view" be taken as to what constitutes "business premises of the employer."

There are other cases which bear upon the point in issue. In Boykin v. Commissioner of Internal Revenue, 260 F.2d 249 (C.A.8), a physician, employed by the Veterans Administration as Chief of Professional Services at the Richmond, Virginia, Hospital, and at the Veterans Hospital at Lincoln, Nebraska, was assigned living quarters on the employer's premises. The living quarters consisted of a house on land owned by the Government near the hospital. There was no question that although the house was separate from the hospital, the physician was considered as living "on the business premises" of the hospital; and, apparently, the Commissioner never contemplated raising the question that the house, separate from the hospital, was not included in the business premises, although no hospital work or hospital "business" was performed on the premises where the doctor lived.

The foregoing case is authority for the proposition that if an employee is required to live on the business premises of his employer, the statute does not envisage that any duties of the employee be performed in a house in which he is obliged to live as a condition of his employment, which is at a slight distance from the building where such duties are actually performed, in order that the employee

benefit from the tax exclusions of Section 119.

In United States Junior Chamber of Commerce v. United States, 334 F.2d 660, 160 Ct.Cl. 392—a somewhat different case—a house was furnished by a national organization as a lodging for its presidents who were elected for a term of one year, and who came from all parts of the country, and who, during one year in residence, were away half the time. The court held that although a president used the house as his private home for himself and his family during his term of office, his business required staff meetings and official entertainment, and he frequently worked in the home and entertained there at night, and that, therefore, he was lodging, and his meals were furnished to him on the business premises of his employer and for the latter's convenience. In its decision, the court said that a domestic servant who lives in the residence of his employer and is required to be available for duty at any time, is entitled to exclude the value of his lodging, even though the residence may or may not be the employer's "business premises;" and, in support of its holding, the court cited the decision of the Tax Court in Anderson v. Commissioner, 42 T.C. 410, the instant case now on appeal before us. The court also observed that the Tax Court had decided in John L. Nolen, P-H Tax Ct. Mem. para. 64,099 (1964), that a medical receptionist, who was required to live on the second floor of the office of her employer so that she could answer telephone calls from patients and pharmacists after the normal office hours and perform other duties on the employer's premises, including storing and caring for perishable medicines, was entitled to exclude the fair rental value of the second-floor lodging from her gross income on the basis that she was living on the "business premises" of her employer.

In United States Junior Chamber of Commerce v. United States, supra, the court stated: "We think that the business premises of § 119 means the premises of the employer on which the duties of the employee are to be performed."

In the foregoing case, the employee was absent from the employer's premises from time to time for a total of half the year; he was using the premises as his private home for himself and his family, but it was his headquarters for his employer's business while he was there, and he worked at such premises and used them for official entertainment for the purposes of the United States Junior Chamber of Commerce.

In the instant case, Robert Anderson was on twenty-four-hour call whether he was at the motel or at the premises furnished by his employer; and his duties, at all times, were to oversee reservations made by guests; to handle complaints made by them; to supervise the sale of food and beverages; and to handle any complaints in connection with the service in the restaurant. At times, he also entertained motel guests on the premises furnished by his employer in connection with the business of the motel company. The house was two minutes away from the motel lobby. During the time he was on the premises furnished for him by his employer, he, being on twenty-four-hour call, necessarily received, as he did at the motel, complaints of guests, questions on reservations, complaints on restaurant service, or inquiries with regard to the supervision of the foods and beverages; and, because he was on twenty-four-hour call, he was performing services for the motel at the premises furnished to him, whether he disposed of such matters by telephone or whether, upon call, he went to the motel to adjust such complaints, or to take care of the services in question.

It clearly appears, in the instant case, that being on twenty-four-hour-a-day call was part of the business of Mr. Anderson, as manager of the motel; and it can also reasonably be considered that he was performing this part of his business while he was lodged by his employer in the dwelling provided for him for that expressly understood purpose, as well as when he was at the motel. As

in *Morelan,* the premises furnished to Mr. Anderson must be considered business premises of his employer, where he awaits calls on his employer's business, and on which he performs his duties for his employer, in the same sense, if not to the same extent, as he performs those duties in the motel itself.

To hold that Mr. Anderson is not entitled to exclude from his gross income the expenses of his food and lodging in this case, because the house in which his employer required him to reside, while on twenty-four-hour-a-day service, was two short blocks from the motel property, leads to curious anomalies. The motel was located on a large tract of land owned, or leased, by the employer. It is easily conceivable that the employer could, in a similar case, build the same small type of dwelling house for his manager, distant the equivalent of two short blocks away from the motel, but still on the property on which the motel was located. This apparently would satisfy the Commissioner that Mr. Anderson was entitled to the exclusion provided by Section 119. What difference would it make that the employer found it best to keep the property on which the motel was located free of the construction of small dwelling houses? What difference would it make if, not wishing a small house on the area on which the motel was located, the employer purchased premises two short blocks away from the motel, in an area other than that on which the motel is standing? In either case, Mr. Anderson would be lodged in a house, two short blocks distant from the motel. The Commissioner agrees that Mr. Anderson, in the first case mentioned, would be entitled to the statutory exclusion, but that he would not be so entitled in the latter case. In both cases, he would be on twenty-four-hour-a-day call. We feel that the construction of the statute contended for by the Commissioner is based on an obsession with words; is narrow and extreme; and is unjustified by the purposes of the statute and contrary to the intention of Congress.

Suppose it were impossible to build the small house on the motel premises because of the fact that the motel was built to cover the entire area owned by the employer, but that, immediately across the street, the employer built such a house for the manager, and that the manager, in such a house, would be nearer the lobby and business office of the motel than he would be if he were lodged at the far end of the motel structure itself. Would the manager, Mr. Anderson, in such a case, be denied the exclusions from gross income under Section 119 because he was not lodged on the business premises of the employer? To hold that, under such circumstances, he would be denied the exclusions, seems to border on the absurd.

We come then to the case of Dole v. Commissioner, 43 T.C. 697, afterward affirmed by the Court of Appeals for the First Circuit in 351 F.2d 308.

The affirmance of the *Dole* case by the Court of Appeals came subsequent to the hearing of arguments in the instant case on appeal.

The facts in the *Dole* case are recited in the Government's brief in the *Morelan* case, heretofore quoted in this opinion. Ante at 14–15. The Tax Court's holding in the *Dole* case was clearly distinguishable from the instant case. It determined only that supervisory employees of a corporation, engaged in manufacturing cloth, who were required by their employer to live in company-owned houses a mile from the mill, were not entitled to exclude from their gross income the fair rental value of their lodgings, under Section 119, on the ground that the nature of their jobs made it necessary to live in close proximity to the mill.

It will be seen at once that the *Dole* case is not the instant case, although, in some particulars, there is a similarity. However, Judge Raum, of the Tax Court, filed a concurring opinion in the *Dole* case in which, at its conclusion, he stated that the instant case of Anderson v. Commissioner in the Tax Court should be overruled. This was not necessary to decision, for Judge Raum expressly

stated that *Dole* was distinguishable from *Anderson;* his statement in the *Dole* case that *Anderson* should be overruled was merely dicta; but, while concurring in the prevailing opinion in *Dole*, he declared:

"The matter probably would never have reached this present state of apparent confusion and disagreement among the members of this Court were it not for the unreviewed decision in Charles N. Anderson, 42 T.C. 410. I think that Anderson is distinguishable for the reason articulated in the majority opinion. But I also think that it is wrong and that it should be overruled to put an end to this confusion that it has created.

"The fact that the motel manager's house in Anderson was 'only two short blocks' (42 T.C. at 415) from the motel property should have been totally irrelevant. The house either was or was not 'on the business premises,' and I can find no basis in the statute to stretch those premises 'two short blocks,' or 'one short block,' or even 'one half short block' beyond the perimeter of the motel property. Of course, if 'two short blocks' are not fatal, it is easy to see how one might be tempted to enlarge the distance to the 1 mile involved herein, or, for that matter, 2 miles or 5 miles. The real difficulty is that neither the residence in *Anderson* nor any single residence involved herein is 'on the business premises' of the employer. And in view of the mischief generated by *Anderson* I think it should be explicitly disapproved."

It is to be observed from the foregoing that Judge Raum stated that, in *Anderson,* he could find no basis for stretching the business premises "two short blocks" or "one short block," or even "one-half short block" beyond the perimeter of the motel property. This conclusion is based upon the strict construction that, as Judge Raum said, "The house either was or was not 'on the business premises.' "

In regard to the foregoing, it is interesting to note that, in the record of the *Morelan* case, it appears that one of the members of the state highway patrol, whose case was joined with that of *Morelan,* gave as an example of the procedure used when a highway patrolman would have his meals near the highway, the following:

"We park our patrol car out where it could be seen. In fact, we had special orders when we used to work an area assignment on Highway 7, we had to leave the car out next to the road and *walk about a quarter of a block to the restaurant,* but before we got out of the patrol car you would call the dispatcher and say, '10–10, please,' and then we would give the telephone number of the restaurant where we stopped at so you could be called at this restaurant." (Emphasis supplied.)

In *Morelan*, the District Court and the Court of Appeals found it to be of no consequence that the premises, on which the highway patrol consumed their meals, were at the police barracks or on private premises—whether adjoining the highway or a quarter of a block, or, implicitly, "two short blocks," away from the highway. They avoided the strict construction adopted by Judge Raum, saying the contention that the patrolmen's meals were not consumed "on the business premises of the employer," "while theoretically arguable, doesn't make much sense" and that it was unrealistic, in view of the highway trooper's work, to treat the employer's place of business as limited to the state patrol headquarters. In other words, they considered the construction contended by the Government in *Barrett* and *Morelan* as too narrow, and liberally interpreted the statute to carry out what was considered the intent of Congress.

In our comments on Judge Raum's views, while we disagree with his conclusions, we can only admire his opinion for its force, clarity and judicial quality. In the concurring opinion in the *Dole* case, calling for reversal of the *Anderson* case in the Tax Court, Judge Raum secured the adhesion of two other judges out of the eleven judges participating.

However, on appeal to the Court of Appeals for the First Circuit, that court, as heretofore stated, affirmed upon the concurring opinion of Judge Raum in a per curiam opinion, stating no more than:

> "Judgment will be entered affirming the decision of the Tax Court on the concurring opinion of Judge Raum."

We have difficulty in perceiving why the per curiam of the Court of Appeals for the First Circuit in *Dole* was based solely on the concurring opinion of Judge Raum in the decision of that case in the Tax Court. The Court of Appeals could well have affirmed the decision of the Tax Court in *Dole* without reference to the concurring opinion of Judge Raum, which called for the reversal of *Anderson*, for, as Judge Raum said, *Dole* was distinguishable from *Anderson*. *Anderson* was, at that time, on appeal to this court and rested on entirely different facts than those in *Dole*. The decision of the *Dole* case, either in the Tax Court, or later in the Court of Appeals, would have no bearing on *Anderson*. We cannot accept the Commissioner's view that the decision in *Dole* in the Court of Appeals for the First Circuit is persuasive authority that the instant case should be reversed, on the reasoning alone of Judge Raum in his concurring opinion in *Dole*, and on his dicta in that case that the Tax Court's opinion and decision in *Anderson* should be overruled.

While we have great respect for the views of the First Circuit, there appears to be in its opinion in the *Dole* case, insufficient development of the issues, and the resolution of the problem involved lacks the thrust, persuasiveness, and marshalling of argument necessary to overcome the well-reasoned conclusions of all but three of the judges of the Tax Court, whose views were cogently set forth in three different opinions, supporting their prior decision in *Anderson*, as well as the Tax Court's decision itself in *Anderson*, the opinion of the Court of Appeals in *Barrett*, and both the District Court's and the Court of Appeals' decisions in *Morelan*.

The words and phrases employed in a statute should be given a reasonable and sensible construction to carry out, if possible, the intention of the legislature. In our opinion, the Conference Report with reference to Section 119 of the Internal Revenue Code of 1954 makes clear what such reasonable and sensible construction was intended, and the cases of Morelan v. United States, D.C., 237 F. Supp. 879; United States v. Morelan, 8 Cir., 356 F.2d 199; United States v. Barrett, 321 F.2d 911 (C.A.5); Boykin v. Commissioner of Internal Revenue, 8 Cir., 260 F.2d 249; United States Junior Chamber of Commerce v. United States, 334 F.2d 660, 160 Ct.Cl. 392, and the *Nolen* case, decided by the Tax Court, all heretofore discussed, confirm that intent, and seem clearly to call for an affirmance of the findings and opinion of the Tax Court.

For the reasons stated in this dissenting opinion, it is my view that the decision of the Tax Court should be affirmed in accordance with the findings of fact and the opinion of Judge Scott, 42 T.C. No. 410.